IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| ARCELORMITTAL USA LLC, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ALBERT ARILLOTTA, | )   No. 2:15-cv-239 |
| GLOBAL DEMOLITION AND | ) |
| RECYCLING, LLC, | ) |
| NMC METALS CORPORATION, and | ) |
| ARILLOTTA ENTERPRISES, LLC., | ) |
| | ) |
|    Defendants. | ) |

## COMPLAINT

Plaintiff, ArcelorMittal USA LLC ("ArcelorMittal") files this Complaint for damages and injunctive relief against the defendants Albert Arillotta ("Arillotta"), Global Demolition and Recycling, LLC, NMC Metals Corp, LLC and Arillotta Enterprises, LLC. and, in support, states:

## JURISDICTION AND VENUE

1. This action arises under the Lanham Trademark Act 15 U.S.C. 1051. Accordingly, this Court has federal question subject matter jurisdiction over this matter pursuant to 15 U.S.C. 1221 and 28 U.S.C. 1338. Additionally, this is a civil action between citizens of different states and the amount in controversy exceeds seventy-five thousand dollars ($75,000) exclusive of interest and costs, conferring jurisdiction under 28 U.S.C. 1332(a). Certain claims are joined as being substantially related under the Trademark Laws of the United States, 15 U.S.C. 1051-1127, and conferring jurisdiction under 28 U.S.C. 1338(b) and 28 U.S.C. 1367.

2. Venue is appropriate in the District Court for the Northern District of Indiana under 28 U.S.C. 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this judicial district.

## THE PARTIES

3.      Plaintiff, ArcelorMittal USA LLC ("ArcelorMittal") is a limited liability company with its principal place of business in Chicago, Illinois. ArcelorMittal is a producer and supplier of steel products. It owns and operates a steelmaking facility in Burns Harbor, Indiana. ArcelorMittal owns numerous federal trademark registrations, including the word marks "ArcelorMittal" (Reg. Nos. 3908649 3643643) and "Mittal" (Reg. No. 4686413) ("Marks").

4.      Defendant Albert Arillotta is an individual residing in Massachusetts. Mr. Arillotta holds himself out as an executive and agent of various industrial contracting companies, including each of the defendant companies.

5.      Global Demolition and Recycling, LLC is a limited liability company organized under the laws of the state of Delaware. Arillotta is an owner and principal of Global Demolition and Recycling, LLC, and as such, exercised a high degree of control over the actions of Global Demolition and Recycling, LLC.

6.      NMC Metals Corporation is a corporation organized under the laws of the state of Delaware with its principal place of business in Swampscott, Massachusetts. Arillotta is the president and director of NMC Metals Corporation and as such, exercised a high degree of control over the actions of NMC Metals Corporation.

7.      Arillotta Enterprises, LLC is a limited liability company with its principal place of business in Swampscott, Massachusetts. Its sole member is Albert Arillotta, who exercised a high degree of control over the actions of Arillotta Enterprises, LLC.

8.      Arillotta and the other defendant companies acted in concert and actively participated in committing the wrongful acts alleged herein.

## FACTUAL BACKGROUND

9. In or about October of 2012, ArcelorMittal began to accept proposals for the installation of a pig iron casting machine at its Burns Harbor steelmaking facility.

10. Arillotta, through his company Arillotta Enterprises, Inc., submitted a proposal for the construction and installation of a pig iron machine at ArcelorMittal's Burns Harbor steelmaking facility in or about May of 2013.

11. In connection with this proposal, Arillotta contacted ArcelorMittal's employees in Burns Harbor telephonically and by electronic mail requesting additional information and specifications regarding the proposed project.

12. When Arillotta's proposal was not accepted, he adopted an aggressive tone in his communications with employees at ArcelorMittal's Burns Harbor facilities, insisting that, among other things, he was friends with ArcelorMittal's former CEO Michael Rippey. Arillotta represented that Mr. Rippey endorsed his proposal for a pig iron casting machine at Burns Harbor and threatened to report ArcelorMittal employees to Mr. Rippey if they did not accept his proposal.

13. ArcelorMittal did not accept Arillotta's bid for the installation of a pig iron casting machine at Burns Harbor.

14. No pig iron casting machine was ever provided to ArcelorMittal's steelmaking facility at Burns Harbor by the Defendants or any other supplier.

15. None of the Defendants ever entered into any contract with ArcelorMittal or any of its subsidiaries to provide goods or services of any kind at Burns Harbor.

16. None of the Defendants ever received express or implied permission to represent that they had any affiliation or association with ArcelorMittal with regard to a pig iron casting machine or the supply of pig iron.

17. None of the Defendants ever received express or implied permission to use ArcelorMittal's registered marks to endorse their goods, services or commercial activities.

18. Economy Industrial, LLC ("Economy Industrial") is an engineering company involved in the design and manufacture of industrial machinery, including pig iron casting machines.

19. In or about February of 2014, Arillotta contacted Economy Industrial regarding a possible agreement pursuant to which Economy Industrial would help Arillotta design and manufacture a pig iron casting machine. Arillotta represented that NMC Metals had entered into a contract with ArcelorMittal to install a pig iron machine at its Burns Harbor steelmaking facility, despite ArcelorMittal's earlier rejection of this proposal.

20. In his discussions with Economy Industrial, LLC, Arillotta represented that "Arcelor Mittal Burns Harbor" entered into a April 14, 2014 contract for the installation of a pig iron casting machine at the #3 Mold Yard. Arillotta forged the signature of Michael Rippey, purportedly as the "North American President" of "ArcelorMittal USA" on this false contract. Arillotta forged the signature of Louis Schorsch, purportedly as the "World Wide President" of "ArcelorMittal USA, Europe" on this false contract. A copy of the false contract created by Arillotta is attached hereto as Exhibit A and incorporated by reference.

21. Economy Industrial and NMC Metals thereafter entered into their own April 8, 2014 agreement for the purchase of a pig iron casting machine, based upon Arillotta's misrepresentation that NMC Metals and ArcelorMittal had a contract for the installation of such a machine at Burns Harbor. When Arillotta was unable to make payments owing under NMC Metals' contract with Economy Industrial, he claimed that ArcelorMittal, through its former CEO

and former North American President Michael Rippey, would wire transfer $338,200.00 to Economy Industrial as an initial payment for the pig iron casting machine.

22.   Arillotta engaged in these negotiations with Economy Industrials despite the fact that he had no contract with ArcelorMittal to supply or install a pig iron casting machine at Burns Harbor. Arillotta knew that Michael Rippey and Louis Schorsch did not endorse his proposal to install a pig iron casting machine at Burns Harbor and knew that ArcelorMittal would never make any payment required under NMC Metals' contract with Economy Industrial.

23.   Economy Industrials eventually realized that Arillotta and NMC Metals did not have a contract with ArcelorMittal. Economy Industrials expended time and effort designing the pig iron machine for Arillotta and could not get payment for those efforts from Arillotta. As a result of Arillotta's knowing misrepresentations to Economy Industrial, and his failure to pay them, Economy Industrial then made demands upon ArcelorMittal.

24.   Arillotta has made additional misrepresentations regarding the existence of agreements between ArcelorMittal and the Defendant companies in attempts to fraudulently obtain factoring financing through forged agreements and invoices. For example, in January of 2015, in connection with an attempt to receive financing from Versant Funding LLC, a factoring company, Arillotta represented that "Arcelor Mittal USA Burns Harbor" had entered into an agreement to purchase $2,244,442.50 of pig iron from NMC Metals Corp. He generated a false invoice, dated December 15, 2014, purporting to represent an agreement between NMC Metals Corp. and "Arcelor Mittal USA." A copy of the December 15, 2014 invoice is attached hereto as Exhibit "B." He further generated a false purchase order (no. 307062), dated November 1, 2014, purporting to purchase pig iron from NMC Metals Corp. Mr. Arillotta doctored an ArcelorMittal form for

5

purchase orders and forged the signature of Mike Rippey on this document. A copy of this purported "purchase order" is attached hereto as Exhibit C.

25. Arillotta similarly attempted to defraud CapitalPlus Equity, LLC ("CapitalPlus"), another factoring company by representing that Global Recycling & Demolition LLC had entered into a $7,500,000 contract with "ArcelorMittal USA" to demolish a power plant on its property in Cleveland, Ohio. Arilllotta provided CapitalPlus with forged purchase orders, proposals and invoices purporting to evidence this agreement bearing marks owned by ArcelorMittal.

26. Each time Arillotta attempted to fraudulently obtain factoring financing based upon forged ArcelorMittal contracts and invoices, ArcelorMittal's employees and representatives have expended substantial time and effort communicating with the factoring companies and explaining Arillotta's fraud.

27. Each of the misrepresentations made by Arillotta were made individually and in his capacity as principal, employee and agent of the defendant companies, Global Recycling & Demolition, LLC and NMC Metals Corporation.

28. Arillotta knew that ArcelorMittal had never agreed to purchase pig iron from NMC Metals. Arillotta knew that Mike Rippey had never authorized the purchase of pig iron by ArcelorMittal from NMC Metals. Arillotta knew that Exhibts A, B and C contained forged signatures of ArcelorMittal employees.

29. Overall, Arillotta has forged contracts and purchase orders purporting to represent in excess of ten million dollars ($10,000,00.00) worth of commercial activities between the defendant companies and ArcelorMittal when, in fact, ArcelorMittal has not hired Arillotta or his companies to perform any of the work shown in the forged contracts and purchase orders.

30. Arillotta generated forged and fraudulent contracts, purchase orders and invoices by copying portions of legitimate forms and contractual documents used by ArcelorMittal for the purpose of confusing and misleading businesses into believing that he had a business relationship with ArcelorMittal.

31. In January and February of 2015, ArcelorMittal demanded that Arillotta cease and desist from misrepresenting the nature of his commercial relationships with ArcelorMittal and to cease communicating with ArcelorMittal's employees. However, Arillotta has continued to misrepresent the nature of his companies' affiliation with ArcelorMittal. Despite ArcelorMittal's cease and desist demand, Arillotta continues his efforts to communicate with ArcelorMittal's employees at Burns Harbor by calling them and requesting that they hire his companies. As recently as June of 2015, Arillotta communicated with Andy Harshaw, President and CEO of ArcelorMittal USA Flat Carbon, through LinkedIn.

32. Arillotta has a public history including charges and allegations of defrauding companies and writing bad checks.

## COUNT I –
## FALSE DESIGNATION OF ORIGIN AND FALSE ENDORSEMENT

33. ArcelorMittal incorporates its allegations in paragraphs 1-32 as and for its allegations of paragraph 33 of Count I.

34. Defendants' acts have caused or are likely to cause confusion, mistake or deception as to the source or origin, association or endorsement of Defendants' commercial activities in that others are likely to believe that Defendants are affiliated, associated or connected with ArcelorMittal or are authorized to hold themselves out as a supplier of goods or services to ArcelorMittal.

35. Defendants' acts have injured ArcelorMittal's image and reputation by creating a likelihood of confusion about those with whom ArcelorMittal contracts to provide goods and services.

36. Defendants' deliberate misrepresentations regarding an association with ArcelorMittal constitute false designation or origin and false endorsement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

37. Defendants' acts greatly and irreparably damage ArcelorMittal and will continue to so damage ArcelorMittal. ArcelorMittal is without an adequate remedy at law and requests that this Court restrain and enjoin Defendants from continuing to represent an association, affiliation or endorsement of Defendants' commercial activities by ArcelorMittal.

## COUNT II –
## DILUTION BY BLURRING AND TARNISHMENT

38. ArcelorMittal incorporates its allegations in paragraphs 1-32 as and for its allegations of paragraph 38 of Count II.

39. Defendants have misused of ArcelorMittal's famous and distinctive marks including in the false invoices, purchase orders and contracts attached. These misuses are likely to tarnish ArcelorMittal's valuable business reputation and goodwill, blur the distinctiveness of its marks and create negative associations with fraudulent ventures.

40. Defendants' acts of dilution and tarnishment are intentional and willful.

41. Defendants acts constitute tarnishment and dilution of ArcelorMittal's famous marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

42. Defendants' acts greatly and irreparably damage ArcelorMittal and will continue to so damage ArcelorMittal. ArcelorMittal is without an adequate remedy at law and requests that this Court restrain and enjoin Defendants from continuing to misuse its marks.

## COUNT III –
## DECEPTION

43. ArcelorMittal incorporates its allegations in paragraphs 1-32 as and for its allegations of paragraph 43 of Count III.

44. Defendants knowingly and intentionally generated false documents, including the purported invoices, purchase orders and agreements attached as Exhibits, and misrepresented the endorsement of its goods and services by ArcelorMittal and its executives with the intent to improperly obtain funding or other commercial advantages.

45. As a result of defendants knowing, intentional and willful acts of criminal deception, ArcelorMittal has suffered actual pecuniary damages.

46. Defendants' actions constitute deception as defined by Indiana Code 35-43-5-3(a)(2). Accordingly, ArcelorMittal is entitled to civil damages as set forth in Indiana Code 34-24-3-1 including three times its actual damages, costs of bringing this action, reasonable attorney's fees, travel expenses, its lost time, actual direct and indirect expenses and reasonable costs of collection.

## COUNT IV –
## FORGERY

47. ArcelorMittal incorporates its allegations in paragraphs 1-32 as and for its allegations of paragraph 47 of Count IV.

48. Defendants created the attached Exhibits purporting to be authorized and/or endorsed by ArcelorMittal employees and officers, including Louis Schorsch and Michael Rippey with intent to defraud.

49. Mr. Schorsch and Mr. Rippey did not give authorization to Defendants to use their names or signatures in the attached Exhibits.

9

50. As a result of defendants knowing, intentional and willful acts of criminal forgery, ArcelorMittal has suffered actual pecuniary damages.

51. Defendants' actions constitute forgery as defined by Indiana Code 35-43-5-2(b). Accordingly, ArcelorMittal is entitled to civil damages as set forth in Indiana Code 34-24-3-1 including three times its actual damages, costs of bringing this action, reasonable attorney's fees, travel expenses, its lost time, actual direct and indirect expenses and reasonable costs of collection.

## COUNT V –
## DECEPTIVE TRADE PRACTICES

52. ArcelorMittal incorporates its allegations in paragraphs 1-51 as and for its allegations of paragraph 52 of Count V.

53. Defendants actions constitute willful deceptive trade practices under the Uniform Deceptive Trade Practices Act as adopted in various states where Defendants have made the aforementioned misrepresentations regarding ArcelorMittal's endorsement of its commercial activities.

54. ArcelorMittal has been damaged by Defendants' deceptive trade practices and is likely to be damaged by Defendants' deceptive trade practices in the future. Therefore, requests this Court grant ArcelorMittal injunctive relief enjoining Defendants from representing an association, affiliation or endorsement of Defendants' commercial activities by ArcelorMittal and misusing ArcelorMittal's marks.

WHEREFORE, the plaintiff ArcelorMittal USA LLC requests that this Honorable Court grant it injunctive relief, money damages, costs and attorney fees as requested herein.

Respectfully submitted,

**ARCELORMITTAL USA LLC**

By: */s/ T. Allon Renfro*
One of its Attorneys

Matthew S. Ver Steeg
Andrew J. Albright
T. Allon Renfro
**SWANSON, MARTIN & BELL, LLP**
330 N. Wabash, Suite 3300
Chicago, Illinois 60611
312.321.9100 – phone
312.321.0990 – fax
mversteeg@smbtrials.com
aalbright@smbtrials.com
trenfro@smbtrials.com