UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| ARCELORMITTAL USA, LLC | ) |
| :--- | :--- |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 2:15-CV-00239 |
| | ) |
| ALBERT ARILLOTTA, | ) |
| GLOBAL DEMOLITION AND | ) |
| RECYCLING, LLC, | ) |
| NMC METALS CORPORATION, and | ) |
| ARILLOTTA ENTERPRISES, LLC., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

ArcelorMittal USA LLC ("ArcelorMittal") seeks a default judgment against Albert Arillotta ("Arillotta"); Global Demolition and Recycling, LLC ("Global"); NMC Metals Corp., LLC ("NMC"); and Arillotta Enterprises, LLC on the grounds that Defendants failed to respond to or participate in this litigation in any way. (DE 14.) For the reasons outlined below, the motion is granted-in-part and denied-in-part, and I will order that ArcelorMittal produce its legal bills for my *in camera* review to determine its attorney fee award.

## Background

ArcelorMittal filed its complaint in this matter on June 18, 2015. (DE 1.) ArcelorMittal served the summons and complaint on Arillotta and each of his defendant companies on July 11, 2015. (DE's 6-9.) Arillotta and the defendant

companies failed to appear, plead, or otherwise defend the lawsuit as provided by the Federal Rules of Civil Procedure. Accordingly, ArcelorMittal filed an Application for Clerk to Enter Default of Defendants on August 11, 2015 (DE 10), which the clerk entered on August 18, 2015 (DE 11). As a result, ArcelorMittal filed this motion for default judgment (DE 14), to which Arillotta and the defendant companies have not responded, despite being served with the motion twice (DE 16). ArcelorMittal seeks injunctive relief and an award of attorneys fees of $46,004.62. (DE 14.) ArcelorMittal has moved for default judgment for only Counts I-IV of its complaint, so I will not address Count V.

According to the allegations in the complaint – which I must take as true at this point – in October of 2012, ArcelorMittal sought proposals for the installation of a pig iron casting machine at its Burns Harbor steelmaking facility. (DE 1 at 3.) Arillotta, on behalf of his company Arillotta Enterprises, Inc., submitted a proposal for the construction and installation of the pig iron casting machine. (*Id*.) ArcelorMittal did not accept Arillotta's proposal, nor did it expressly or implicitly give any permission for Arillotta to represent that he had any affiliation with ArcelorMittal. (*Id*.)

Some time later, Arillotta contacted a third party – Economy Industrial – to enter into an agreement in which Economy Industrial would help Arillotta design and manufacture a pig iron casting machine. (*Id*. at 4.) Arillotta represented that NMC Metals Corporation – a company in which Arillotta is both President and Director (*Id*. at 2)– had entered into a contract with ArcelorMittal to install a pig iron casting machine.

2

(*Id*. at 4.) This was untrue. (*Id*.) To support the lie, Arillotta created a false contract between NMC and ArcelorMittal that contained the forged signatures of Michael Rippey, purportedly as the "North American President," and Louis Schorsh, purportedly the "World Wide President" of "ArcelorMittal Europe." (DE 1 at 4.) Economy Industrial then agreed to manufacture and sell a pig iron casting machine to NMC. (*Id*.) Ultimately, Arillotta was unable to pay Economy Industrial for its work, but claimed that ArcelorMittal would wire the payment. (*Id*. at 4-5.) Arillotta knew that Michael Rippey and Louis Schorsh did not accept or sign his proposal to install a pig iron casting machine and further knew that ArcelorMittal would not pay Economy Industrial for any work under its contract with NMC. (*Id*. at 5.) Economy Industrial eventually learned that NMC did not have a contract with ArcelorMittal and as a result of Arillotta's failure to pay, it made demands upon ArcelorMittal. (*Id*.)

The misrepresentations didn't end there. Arillotta reached out to additional companies, misrepresenting his and his companies' relationships with ArcelorMittal. For example, in January of 2015, while attempting to get financing from Versant Funding LLC, Arillotta misrepresented that "ArcelorMittal USA Burns Harbor" had agreed to purchase $2,244,442.50 of pig iron from NMC. (DE 1 at 5.) To support this lie, Arillotta fabricated an invoice and purchase order between ArcelorMittal and NMC for the pig iron, and further forged Mike Rippey's signature on the purchase order. (*Id*. at 5-6.)

Arillotta also tried to defraud another third party, CapitalPlus Equity, LLC, into giving him a loan by representing that Global Recycling & Demolition LLC had entered into a $7,500,000 contract with "ArcelorMittal USA" to demolish a power plant on its property in Cleveland, Ohio. (DE 1 at 6.) Here again, Arillotta provided CapitalPlus with forged purchase orders, proposals and invoices allegedly executed between Global and ArcelorMittal. (*Id.*)

ArcelorMittal alleges that each of the misrepresentations made by Arillotta were made individually and in his capacity as principal, employee and agent of the defendant companies, Arillotta Enterprises, Global Recycling & Demolition, LLC and NMC Metals Corporation. (*Id.*) Importantly, the false contracts, purchase orders, and invoices all bear ArcelorMittals' name and/or trademarks. (*Id.*)

## **Discussion**

I may enter default judgment under Rule 55(b)(2) once the clerk has entered a default against the defendant under Rule 55(a). *E.g., Wolf Lake Terminals v, Mut. Marine Ins. Co.,* 433 F. Supp. 2d 933, 941 (N.D. Ind. 2005). Under Rule 55(a), the clerk is to default a party against whom a judgment is sought when that party has failed to plead or otherwise defend. Fed. R. Civ. P. 55(a). This entry is recognition of the fact that a party is in default for a failure to comply with the rules. Since the Clerk has already entered default against Defendant here (DE 11), I may enter a default judgment under Rule 55(b)(2).

While Federal Rule of Civil Procedure 55(b) gives district courts the power to enter default judgment, they must exercise discretion when doing so. *See O'Brien v. R.J. O'Brien & Assocs., Inc.,* 998 F.2d 1394, 1398 (7th Cir. 1993); *Davis v. Hutchins,* 321 F.3d 641, 646 (7th Cir. 2003). "As a general rule, a default judgment establishes, as a matter of law, that defendant[] [is] liable to plaintiff as to each cause of action alleged in the complaint." *O'Brien,* 998 F.2d at 1404 (citation and internal quotation marks omitted). All well-pled allegations in the complaint are presumed true when ruling on a request for default judgment. *Black v. Lane,* 22 F.3d 1395, 1399 (7th Cir. 1994). Thus, if the complaint establishes the requisite elements of liability on a claim, a plaintiff is entitled to relief for that claim. *See In re Catt,* 368 F.3d 789, 793 (7th Cir. 2004) ("Once the default is established . . . the plaintiff must still establish the entitlement to the relief he seeks.").

Courts may consider a number of factors when deciding a motion for default judgment. Those factors include the amount of money potentially involved, whether material issues of fact or issues of substantial public importance are present, whether the default is largely technical, whether plaintiff has been substantially prejudiced by the delay involved, and whether the grounds for default are clearly established or are in doubt. 10A Wright *et al.*, Fed. Prac. & Proc. Civ. 3d § 2685 (3d ed. 2007); *see Cameron v. Myers*, 569 F. Supp. 2d 762, 764 (N.D. Ind. 2008).

In this case, the grounds for default regarding most of ArcelorMittal's claims are clearly established. First, the default is not simply a technicality, as Arillotta and the defendant companies have not pleaded or appeared in this matter since the complaint

5

was filed in June 2015. Arillotta and the defendant companies have shown no intention of responding to the complaint, nor participating in this case in any way, despite being served with the complaint in July 2015 and being served with this motion in September 2015. Arillotta and the defendant companies cannot be allowed to completely ignore this suit. Second, the amount of money requested does not strike me as outlandish, although the exact amount of attorneys fees still needs to be established. Importantly, ArcelorMittal isn't actually seeking any monetary damages beyond its attorneys fees and expenses. These factors weigh in favor of default judgment.

My next task, then, is to determine whether ArcelorMittal's alleged facts meet the elements required for each of its legal claims. *In re Catt*, 368 F.3d at 793. In support of its claims, ArcelorMittal attached the alleged false contract, invoices, and purchase orders created by Arillotta. [DE 1-1, 1-2, 1-3.] ArcelorMittal claims that Arillotta and the defendant companies' deliberate misrepresentation constitute:

(1) False designation or origin and false endorsement in violation of Section 43(1) of the Lanham Act, 15 U.S.C § 1125 (a);

(2) Tarnishment and dilution of ArcelorMittal's famous marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125 (c);

(3) Deception as defined by Indiana Code 35-43-5-3(a)(2);

(4) Forgery as defined by Indiana Code 35-43-5-2(b); and

(5) Willful deceptive trade practices under the Uniform Deceptive Trade

Practices Act.

(DE 1 at 7-10.)

ArcelorMittal has not moved on Count V, willful deceptive trade practice under the Uniform Deceptive Trade Practices Act, so I will not address that claim. I'll discuss each of the remaining counts in turn.

*False Designation or Origin and False Endorsement*

Under Section 43(a) of the Lanham Act, Defendants will be liable to Arcelormittal if it can show that Defendants used its name in commerce so as to "deceive as to . . . the origin, sponsorship, or approval" of Defendants' goods or services. 15 U.S.C. § 1125(a)(1). As a threshold matter, to state a claim under Section 43(a), a plaintiff must show that it has a protectable mark. *Meridian Mut. Ins. Co. v. Meridian Ins. Group*, 128 F.3d 1111, 1115 (7th Cir. 1997). Registration is prima facie evidence of a valid, protectable mark. *Promatek Indus., LTD v. Equitrac Corp.*, 300 F.3d 808, 812 (7th Cir. 2002). "False endorsement occurs when a person's identity is connected with a product or service in such a way that consumers are likely to be misled about that person's sponsorship or approval of the product or service." *Stayart v. Yahoo! Inc.*, 651 F.Supp.2d 873, 880 (E.D.Wis. 2009.) In other words, ArcelorMittal wins if it can show that Defendants falsely used ArcelorMittal's name in an effort to convince others that ArcelorMittal sponsored or approved of Defendants' services.

Here, there is no question that ArcelorMittal at least presumptively has a

7

protectable mark, as "ArcelorMittal" is a registered trademark. (DE 15-2.) ArcelorMittal alleges, and I must take as true, that Defendant Arillotta individually and on behalf of Defendant NMC prepared a false contract -- forging the signatures of two of ArcelorMittal's employees – that demonstrated a relationship between the parties that didn't exist. ArcelorMittal further alleges that Arillotta misrepresented to another company that Defendant Global had entered into a contract with it, again providing forged purchase orders and invoices between Global and ArcelorMittal. Clearly the contracts, purchase orders, and invoices in both instances indicated to others that ArcelorMittal sponsored or approved of Defendants' services, or else it wouldn't have entered into such agreements. And each of these documents bore ArcelorMittal's marks. As ArcelorMittal's claims meet the required elements, I will grant it default judgment on this count against Arillotta, NMC, and Global.

I will not, however, grant default judgment against Arillotta Enterprises, LLC. Although ArcelorMittal alleges generally that "Arillotta and the other defendant companies acted in concert and actively participated in committing the wrongful acts alleged herein" (DE 1 at 2), it doesn't actually allege any specific wrongdoing on Arillotta Enterprises' part. The only allegation is that Arillotta Enterprises submitted the initial rejected proposal. There is no allegation nor indication that its name appears on any of the forged or false documents, or that it was actually involved in some other way in the misrepresentations beyond the conclusory statement above. Without more, I can't enter default judgment against this entity.

*Tarnishment and Dilution*

To demonstrate trademark dilution under the Section 43(c) of the Lanham Act, ArcelorMittal must show that Defendants used its famous mark or trade name in commerce in such a way as to "cause dilution of the distinctive quality of the mark." 25 U.S.C. § 1125(c)(1). One way of showing dilution is to demonstrate the mark has been tarnished such that "a junior mark's similarity to a famous mark causes consumers mistakenly to associate the famous mark with the defendant's inferior or offensive product." *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 466 (7th Cir. 2000).

ArcelorMittal alleges that the same false contracts, purchase orders and invoices discussed above have tarnished its mark because its registered trademarks "are now associated with Defendants' fraudulent activity." (DE 15 at 11.) But that's not what a tarnishment claim is geared towards. Instead, tarnishment requires that Defendants' use of ArcelorMittal's mark has caused someone to associate some inferior product or service of Defendants' with ArcelorMittal. I don't see how that's happened here. Defendants didn't claim ArcelorMittal's services to be their own; instead, they claimed that ArcelorMittal wanted Defendants' services, which is covered by the claim above. And even if tarnishment can cover this type of conduct, I fail to see how ArcelorMittal's trademark has been tarnished by Defendants or is likely to be. ArcelorMittal presents no evidence of this, and my sense is that the individuals and companies who view Defendants negatively because of the fraud they've committed are also aware that ArcelorMittal was a victim of that fraud. Of course Defendants' actions are abhorrent,

9

but without something to indicate that ArcelorMittal's mark is likely to be harmed, I can't enter judgment here because there's nothing to support that element beyond ArcelorMittal's say-so.

*Deception and Forgery under Indiana Law*

ArcelorMittal is allowed to bring a civil action against a defendant who has committed criminal deception and forgery. Ind. Code § 34-24-3-1. Under Indiana law, criminal deception is defined as "knowingly or intentionally mak[ing] a false or misleading written statement with intent to obtain property, employment, or educational opportunity." Ind. Code. § 35-43-5-3(a)(2). Forgery is defined as, in relevant part, as "possess[ing] a written instrument in such a manner that it purports to have been made: (1) by another person; (2) at another time; (3) with different provisions; or (4) by authority of one who did not give authority." Ind. Code. § 35-43-5-2(d). Clearly, the false contracts, purchase orders, and invoices discussed above bearing forged signatures of ArcelorMittal employees constitute such behavior. ArcelorMittal states unequivocally that it entered into no agreements with Defendants, nor provided any authority to Defendants to represent they had any relationship with ArcelorMittal. It also flatly denies that any of its employees signed the documents allegedly bearing their signatures. I will therefore enter default judgment against Arillotta, NMC, and Global on the deception and forgery counts. I will not, however, enter default judgment against Arillotta Enterprises for the same reasons previously discussed above.

*Claim for Attorneys' Fees*

ArcelorMittal seeks attorneys' fees pursuant to the Indiana Code and the Lanham Act. (DE 15 at 13.) The Indiana statute on deception and forgery requires the recovery of reasonable attorneys' fees. Ind. Code § 34-24-3-1. "Reasonable attorney fees and expenses under Ind. Code § 34-24-3-1 is mandatory...." *Integrity Sales & Service, Inc. v. Crabbe,* No. 1:14-cv-367, 2015 WL 631468, at *4 (N.D. Ind. Feb. 12, 2015). Since I am entering default judgment against Arillotta, NMC, and Global on the deception and forgery counts, ArcelorMittal is entitled to reasonable attorneys fees and expenses on these counts. Further, the Lanham Act allows for recovery of attorney fees in *exceptional* cases. 15 U.S.C.A § 1117(a) (emphasis added). " '[E]xceptional' cases encompass cases in which the acts of infringement are 'malicious, fraudulent, deliberate, or willful.' " *BASF Corp. v. Old World Trading Co., Inc.*, 41 F.3d 1081, 1099 (7th Cir.1994). Here, based on uncontested allegations of Arillotta and defendant companies' deliberate misrepresentations, I find this is an "exceptional case" in which reasonable attorneys' fees should be awarded.

Normally, upon considering a motion for default judgment, a court must have a hearing to determine damages. *See Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir.1983). In cases where damages are capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits, however, such a hearing is unnecessary. *See O'Brien*, 998 F.2d at 1404 (citing *Dundee Cement Co.*, 722 F.2d at 1323). ArcelorMittal submits an affidavit from its attorney containing a statement of the amount billed for each task for which

11

ArcelorMittal seeks fees, along with the reasonable hourly rates for senior partners, junior partners, and associates. (DE 15-6.) However, ArcelorMittal has not provided me with the hours spent on each task nor whether a senior partner, junior partner, or associate performed the tasks. It does, however, state that it is willing to provide its detailed bills to me for an *in camera* review. Since I can't ascertain the reasonableness of those fees without the bills, I therefore **ORDER** ArcelorMittal to provide me with its detailed billing for my review. Those bills should hopefully allow me to determine a reasonable fee award without conducting a hearing. If after that review, however, I still am not able to determine a reasonable fee award, I will schedule a hearing by separate order.

## Conclusion

For the foregoing reasons, Plaintiff's Motion for Entry of Default Judgment (DE 14) is **GRANTED-IN-PART** and **DENIED-IN-PART**. Default judgment shall be entered against Defendants Arillotta, NMC, and Global on Counts I, III, and IV of the Complaint. Defendants Arillotta, NMC, and Global along with their officers, agents, and employees are permanently enjoined from: (1) forging contracts with ArcelorMittal; (2) presenting forged contracts to any other company; (3) misrepresenting an association or affiliation with ArcelorMittal; (4) misusing ArcelorMittal's registered trademarks; and (5) continuing to contact ArcelorMittal employees. Reasonable attorneys' fees, expenses, and costs will be awarded pending my receipt of ArcelorMittal's bills and/or a hearing on the matter. This case remains pending as to

Counts II and V against all defendants, and Counts I, II, and IV against Arillotta Enterprises, LLC, with leave for ArcelorMittal to refile its request if it can establish the required elements consistent with this order.

**SO ORDERED**.

ENTERED: November 17, 2015

                                                    s/Philip P. Simon
                                                    PHILIP P. SIMON, CHIEF JUDGE
                                                    UNITED STATES DISTRICT COURT